UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**UNITED STATES OF AMERICA**

v.                                              Criminal Action No. 2:02-00097

**ROY BLANKENSHIP**

<u>MEMORANDUM OPINION AND ORDER</u>

Pending are defendant Roy Blankenship's COVID-related motions as follows: Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 113), filed July 13, 2020; Motion for Leave to Supplement Reply in Support of Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582 (ECF No. 123), filed September 17, 2020; Motion for Leave to File Second Supplement in Support of Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582 (ECF No. 124), filed December 14, 2020.

Pending also are Blankenship's Motion to Extend Deadline to File Memorandum in Support of Relief Under 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 128), filed December 10, 2021;[1] and

---

[1] Blankenship, via counsel, submits that this motion is now moot.  ECF No. 129, at 1 n.1.

Memorandum in Support of Request for Sentence Reduction for Extraordinary and Compelling Reasons (ECF No. 129), filed December 13, 2021.[2]

### I. Background

On April 23, 2002, Roy Blankenship ("Blankenship") was charged in a two-count indictment with conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and conspiracy to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 846. Indictment, ECF No. 16. On July 3, 2002, Blankenship was found guilty of both counts by a jury. ECF No. 38.

According to the Presentence Investigation Report ("PSR") prepared in Blankenship's case,[3] the total amount of cocaine attributable to Blankenship was 18.331 kilograms. PSR ¶¶ 31–32.

Using the 2001 edition of the Untied States Sentencing Guidelines Manual, the United States Probation Office found that the Base Offense Level for 18.331 kilograms of cocaine was 34.

---

[2]   Inasmuch as this memorandum asks the court to grant compassionate release, it is construed as a motion under 18 U.S.C. § 3582(c)(1)(A)(i).
[3]   The Presentence Investigation Report is dated November 4, 2002. It appears that the PSR has not been filed on the electronic docket for this case.

Id. at ¶ 37. The PSR recommended a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) for being an organizer of a criminal enterprise. Id. at ¶ 39. Accordingly, the PSR provided a Total Offense Level of 36. Id. at ¶ 42.

Additionally, the Probation Office found that Blankenship met the criteria for the Career Offender Provision under U.S.S.G. § 4B1.1(b) based on prior felony convictions involving controlled substance offenses. Accordingly, Blankenship's offense level was raised to 37. Id. at ¶ 43.

Blankenship's prior convictions resulted in a criminal history score of 6. Id. at ¶ 53. Two points were added because the offenses of conviction were committed while he was under a criminal justice sentence of parole, resulting in a cumulative criminal history point computation of 8. Id. A criminal history score of 8 established a Criminal History Category of IV, however, because Blankenship had received the career offender designation, his Criminal History Category was raised to VI. Id.

Blankenship's sentencing hearing was held by Judge Charles H. Haden II on November 4, 2002. Judge Haden overruled Blankenship's objections to the PSR and adopted it in whole. See Sealed Mem. of Sentencing Hearing & Rep. of Statement of Reasons, ECF No. 51.

The court determined that a Total Offense Level of 37 and Criminal History Category of VI applied, resulting in an applicable mandatory Guideline range of 360 months to life. Id. at 4–5. Judge Haden sentenced Blankenship to concurrent 360-month terms on both counts of the indictment, to be followed by five years of supervised release. Judgment, ECF No. 50.

Blankenship's projected release date is November 1, 2027. See Fed. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited May 31, 2022).

## II.  Legal Standard

Generally, once a court has imposed a term of imprisonment, it lacks the authority to modify the sentence. 18 U.S.C. § 3582(c). In December 2018, however, Congress enacted the First Step Act, which amended 18 U.S.C. § 3582 and enabled courts to reduce a term of imprisonment under certain circumstances. First Step Act of 2018, Pub. L. No. 115–391, § 603, 132 Stat. 5194, 5239.

As amended, § 3582 provides that after satisfying an administrative exhaustion requirement,[4] courts may reduce a sentence if (1) "extraordinary and compelling reasons warrant

---

[4] Blankenship submits that he has exhausted his administrative remedies with the Bureau of Prisons, and the government has not alleged a failure to exhaust.

4

such a reduction," (2) "reduction is consistent with the applicable policy statements issued by the Sentencing Commission," and (3) release is consistent with the factors listed under 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has clarified that at the current time there are no "applicable policy statements issued by the Sentencing Commission." See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020). Accordingly, the court is not limited by an enumerated list of reasons that warrant relief and "enjoy[s] broad discretion in conducting this analysis." United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021).

### III. Analysis

A. <u>Career Offender Designation and Rehabilitation</u>

In United States v. McCoy, the Fourth Circuit addressed whether changes in sentencing law could support compassionate release under § 3582(c)(1)(A)(i). McCoy was a consolidated action considering motions for compassionate release brought by defendants who had been convicted of multiple offenses under 18 U.S.C. § 924(c). McCoy, 981 F.3d 271, 275 (4th Cir. 2020). Section 924, in relevant part, "imposes mandatory minimum sentences for using or carrying a firearm in connection with a crime of violence: for a first offense, a

5

five- to ten-year mandatory minimum, depending on the circumstances; and for a subsequent conviction, a consecutive 25-year mandatory minimum.  Prior to the First Step Act, a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case." Id.  The First Step Act ended this practice of "stacking," and clarified that the 25-year mandatory minimum only applies to defendants who have previously been convicted under § 924(c) in a separate case.  Id.; § 403(a), 132 Stat. at 5222.

The McCoy defendants sought, and were granted, compassionate release at the district court level, and the United States appealed, arguing that disproportionately long sentences could not serve as "extraordinary and compelling" reasons warranting compassionate release.

The McCoy Court found that "the severity of the defendant's 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act" were factors that could be considered as part of the "extraordinary and compelling reasons" underlying compassionate release.  Id. at 285.  The court affirmed the grants of compassionate release, noting that the district courts had conducted "individualized inquiries," and had based relief

6

not just on sentencing disparities but also on factors such as defendants' "relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served."  Id.

Relying on McCoy as persuasive authority, Blankenship argues that extraordinary and compelling reasons exist that warrant release in his case.  First, he argues that if he were sentenced today, he would not be classified as a career offender and thus would be subject to a shorter sentence.

Pursuant to the United States Sentencing Guidelines, a defendant is classified as a career offender if,

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).  If the career offender designation applies, the Guidelines provide that the defendant's Criminal History Category shall be Category VI.  U.S.S.G. § 4B1.1(a).  Additionally, Section 4B1.1(b) provides for an enhancement in the defendant's Total Offense Level based upon the statutory maximum for the offense of conviction.

7

As previously noted, at the time of his sentencing, Blankenship met all the criteria for career offender designation.[5]  Since Blankenship's sentencing, however, the Fourth Circuit has held that the offense of conspiracy to distribute drugs under 21 U.S.C. § 846, being that for which he was sentenced, is not a "controlled substance offense" under the Guidelines.  United States v. Norman, 935 F.3d 232 (4th Cir. 2019).[6]  Accordingly, if sentenced today, Blankenship would not meet the second criterion for designation as a career offender.

Blankenship and the government agree that under today's Guidelines, Blankenship's Base Offense Level would be 32.  U.S.S.G. § 2D1.1(c)(4).[7]  With a two-level enhancement for playing a leadership role, Blankenship's Total Offense Level

---

[5]   The predicate offenses underlying Blankenship's career offender designation include a 1980 conviction for possession with intent to deliver methaqualone and a 1985 conviction for conspiracy to distribute LSD and possession with intent to distribute cocaine.

[6]   In Norman, the court concluded that conspiracy under § 846 does not qualify as a controlled substance offense because it does not require an overt act and thus "criminalizes a broader range of conduct than that covered by generic conspiracy."  935 F.3d at 237–38.

[7]   While not addressed by the parties, this reduction in the base offense level is due to Amendment 782 to the Sentencing Guidelines, effective November 1, 2014, which lowered the base offense level for at least 15 KG but less than 50 KG of cocaine from 34 to 32.

would be 34.  Without the career offender designation, Blankenship's Criminal History Category drops from VI to IV.

A Total Offense Level of 34 and Criminal History Category IV produce an advisory guideline range of 210 to 262 months.  The lower end of that range is 150-months shorter than the sentence imposed pursuant to the 360 to life guideline range Blankenship faced at his sentencing hearing in 2002, which at that time, prior to Booker, was deemed mandatory.  See United States v. Booker, 543 U.S. 220 (2005).

Second, in addition to the disparity between the sentence he received and the one he believes he would receive if sentenced today, Blankenship submits that his record while incarcerated also supports a reduction in his sentence.

Since his term of incarceration began, Blankenship has taken numerous educational courses and has maintained consistent employment.  See ECF No. 129-1; ECF No. 129-2.  Blankenship's most recent Individualized Needs Plan Program Review states that he "has maintained employment with satisfactory work reports since his last review," has completed multiple classes, and has started to save money for release.  ECF No. 129-1.

Moreover, he has incurred only three minor disciplinary infractions during his time in prison, for which he

received only administrative sanctions. ECF No. 129-3. Blankenship's last infraction occurred in 2017 and resulted only in lost communication and phone privileges. Id. Given the length of time Blankenship has spent in federal custody, this lack of disciplinary infractions is significant. See United States v. Spotts, Nos. 3:00-cr-0647; 3:98-00047-01, 2019 WL 6521981, at *2 (S.D.W. Va. Dec. 3, 2019) (finding it "[s]omewhat remarkabl[e]" that the defendant "accumulated no more than twelve sanctions over the course of his nearly twenty-two year term of incarceration").

The government "concedes that Defendant would no longer be a career offender if sentenced under today's law." ECF No. 1332, at 6. Still, it argues that Blankenship is not entitled to release as a matter of right and that his "individual circumstances militate against a finding of extraordinary and compelling reasons." Id. at 6–12.

Specifically, the government states that although Blankenship "has a positive institutional record," he is unlike the defendants in McCoy who were young men with minimal criminal histories. Id. at 9. Instead, it submits that Blankenship's "criminal behavior spans multiple decades, and primarily consists of drug related convictions." Id. The government compares Blankenship to the defendant in United States v.

Spencer, who was denied compassionate release despite no longer being a career offender based on the seriousness of his drug offense and his "lengthy adult criminal history." Id. at 9–10 (quoting United States v. Spencer, 521 F. Supp. 3d 606, 610–611 (E.D. Va. 2021), aff'd, 853 F. App'x 833 (4th Cir. 2021).

The government's comparison of Blankenship to the defendant in Spencer overlooks the finer details of both cases. The defendant in Spencer had served nearly ten years of his 235-month sentence, whereas Blankenship has been incarcerated for more than twenty years. Second, the "lengthy adult criminal history" of that defendant included twenty-one adult criminal convictions, whereas Blankenship's PSR details six convictions, one of which was for misdemeanor drug possession and resulted in only six months of probation and two of which were misdemeanor offenses of public intoxication and driving with an expired motor vehicle inspection sticker, which resulted in small fines of $25 and $20 respectively. PSR ¶¶ 47–52.

The court finds that the disparity between the sentence Blankenship received and the one he would have received had he not been designated as a career offender, combined with his disciplinary and rehabilitative record while incarcerated, supports a finding of extraordinary and compelling circumstances that warrant release under § 3582. See United States v.

11

Johnson, No. CR 3:11-00054, 2022 WL 1510544 (S.D.W. Va. May 12, 2022) (Chambers, J.); United States v. Minter, No. 2:12-CR-00191, 2021 WL 1894454 (S.D.W. Va. May 11, 2021) (Goodwin, J.); United States v. Vaughn, No. 5:08-CR-00266, 2021 WL 136172 (S.D.W. Va. Jan. 13, 2021) (Volk, J.).

Additionally, the court finds that a grant of compassionate release in this case is consistent with the factors enumerated in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A).

Section 3553(a) requires the court to impose a sentences that is "sufficient, but not greater than necessary" to comply with the need for the sentence (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (2) to afford adequate deterrence to criminal conduct"; (3) "to protect the public from further crimes of the defendant;" and (4) "to provide the defendant with needed education or vocation training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

A sentence of time served, after more than 242 months, falling within the upper middle of the 210 to 262 months guideline range, reflects the seriousness of Blankenship's crime, promotes respect for the law, and is a sufficiently just

12

punishment that adequately serves the purposes of specific and general deterrence.

Although the government submits that Blankenship's history and characteristics suggest that he is a danger to the public and that he "has demonstrated on several occasions that he is likely to return to criminal conduct shortly after his release from incarceration," ECF No. 133, at 12, the court finds no indication that Blankenship, now 68 years of age, is a threat to public safety or that the public otherwise needs to be protected from further crimes, particularly given his institutional record over the past twenty years.

Finally, Blankenship's conduct while incarcerated suggests that he has taken advantage of educational and vocational opportunities while in prison and further incarceration is not needed to provide him education or vocation training.

Inasmuch as the court is satisfied that compassionate release is consistent with the factors set forth in § 3553, it finds that Blankenship is entitled to relief under § 3582(c). Accordingly, his motion for compassionate release, as supported by the memorandum filed on December 13, 2021 (ECF No. 129), is granted.

**B.    COVID-19**

In addition to his motion for compassionate release based on his former designation as a career offender, Blankenship has filed a motion for compassionate released based on the COVID-19 pandemic (ECF No. 113).  In that motion, Blankenship claims that he is "experiencing generally declining health, has suffered from Hepatitis C and chronic hypertension during most of his 18 years in BOP custody, and has been prescribed immune response-weakening corticosteroids to treat various medical conditions."  ECF No. 113, at 1.

Inasmuch as the court has already found that compassionate release is warranted based on the disparity between the sentence he received and the sentence he would be subject to if sentenced today, as well as his post-conviction rehabilitative efforts, the court finds that Blankenship's motion for compassionate release grounded on concerns about the COVID-19 pandemic may be denied as moot.

14

## IV. Conclusion

In light of the foregoing, the court ORDERS as follows:

1. Blankenship's COVID-19 related motions (ECF Nos. 113, 123, and 124) be, and hereby they are, denied as moot.

2. Blankenship's Motion to Extend Deadline to File Memorandum in Support of Relief Under 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 128) be, and hereby it is, denied as moot.

3. Blankenship's motion for compassionate release, as presented within his Memorandum in Support of Request for Sentence Reduction for Extraordinary and Compelling Reasons (ECF No. 129), be, and hereby it is, granted.

4. Blankenship's sentenced is reduced to time served.

5. Blankenship shall serve the five-year term of supervised release ordered in his criminal judgment dated November 6, 2002.

6. The Bureau of Prisons shall release Blankenship within 10 days of the date of this order.

The Clerk is directed to transmit copies of this order to the defendant and all counsel of record, the United States Probation Office, the United States Marshal, and to the Federal Bureau of Prisons.

ENTER: June 6, 2022

John T. Copenhaver, Jr.
Senior United States District Judge